IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TWILA DENISE BARTLETT

    Plaintiff,

v.                                                            Civil Case No.: 5:15–CV–76
                                                                                 (STAMP)

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

    Defendant.

## REPORT AND RECOMMENDATION

For the reasons that follow, I recommend that [ECF No. 9] Plaintiff's Motion for Summary Judgement be **GRANTED IN PART** and that [ECF No. 11] the Commissioner's Motion for Summary Judgement be **DENIED**.

## I. INTRODUCTION

On June 18, 2015, the Plaintiff, Twila Denise Bartlett ("Ms. Bartlett" or "Plaintiff"), filed this action for judicial review of an adverse decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. ECF No. 1. The Commissioner filed her Answer on August 24, 2015. ECF No. 6. The Plaintiff then filed her Motion for Summary Judgment on September 9, 2015. ECF No. 9. The Commissioner filed her Motion for Summary Judgment on October 9, 2015. ECF No. 11. Plaintiff filed a Response on October 21, 2015. ECF No. 13.

## II. FACTS

### A. Procedural History

Plaintiff applied for SSI alleging a disability beginning on September 22, 2003. R.10. Plaintiff's claims were initially denied on August 28, 2012, and upon reconsideration on October 16, 2012. *Id.* On November 9, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* An ALJ hearing was held on February 11, 2014, before ALJ Jacqueline Haber. *Id.* At the hearing, Plaintiff was represented by Jennifer LaRosa.[1] R. 29–30. Plaintiff testified during the hearing, as did a Vocational Expert ("VE"). R. 10. On March 10, 2014, the ALJ found that Ms. Bartlett was not disabled under section 1614(a)(3)(A) of the Social Security Act. R. 21. Plaintiff appealed this decision to the Appeals Council, which denied her request for review on April 23, 2015. R. 5. Plaintiff timely filed this action.

### B. Medical History

A detailed account of Plaintiff's medical history is unnecessary to the Court's decision because the Plaintiff has raised legal issues, rather than factual disputes requiring exhaustive written analysis of underlying facts. Thus, although the Court has read the parties' pleadings and the record, it finds that a brief recitation of Plaintiff's medical history is appropriate.

The ALJ found that Plaintiff "has the following severe impairments: history of hepatitis C/chronic liver disease; chronic obstructive pulmonary disease; (COPD); rheumatoid arthritis; gastroesophageal reflux disease (GERD); cervicalgia/cervical strain;

---

[1] The ALJ, in her decision, stated that Plaintiff was represented by Andrea Pecora, yet the transcripts indicate that it was "Jennifer LaRosa, Attorney for Claimant"; however, it is unclear to the Court whether Ms. Larosa is, in fact, an attorney.

2

lumbar strain; mild degenerative changes of the left ankle/foot; and bipolar disorder/depression." R. 12. Plaintiff does not contend that the ALJ failed to recognize some other condition not listed above; however, Ms. Bartlett argues that the ALJ's analysis and decision regarding some of the abovementioned conditions was improper and cause for remand in this matter.

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on February 11, 2014. R.10. The following portions of the testimony are relevant to the disposition of this case.

1. <u>Ms. Bartlett's Testimony</u>

At the hearing, Plaintiff testified that she was 52 years old. R. 33. She also testified that she lives with her boyfriend. R. 34–35. Plaintiff testified that she has not worked since 2010. R. 39–40. Over the course of the previous two years, Plaintiff lost approximately forty pounds due to stomach issues. R. 33–34. Plaintiff testified that she has three children, none of which reside with her. R. 34. Plaintiff testified that she has a current driver's license, but she only drives about once a week or every other week. R. 36. Plaintiff also testified that she graduated from high school, could read English, and perform simple math. R. 36–37. Plaintiff testified that she smokes between one-half to one pack of cigarettes a day and drinks around four alcoholic beverages per week. R. 37–38.

The ALJ then asked Plaintiff about her work history and the nature of the work performed at each place of employment. R 40–45. Then, the ALJ asked Ms. LaRosa to question Plaintiff regarding her impairments. R. 46.

Plaintiff testified that she has been seeing a doctor for Hepatitis C and Stage 3 Fibrosis. R. 46. However, she could not take medicine to treat either because of her mental

state and depression. Id. Regarding her symptoms, Plaintiff testified that problems with her liver cause fatigue, jaundice, swelling, pain on her right side, and trouble in her esophagus. R. 46–47. Plaintiff testified that the pain and swelling is constant. R. 47–48. She testified that she also suffers from frequent headaches. R. 55–56.

Plaintiff testified that she suffers from persistent nausea and vomiting, for which she takes Zofran. R. 48–49. Taking Zofran has helped with the vomiting. Id. For the past year, Plaintiff said she has had difficulty remembering things due to elevated levels of ammonia. R. 49. Plaintiff also required antibiotics to treat a bowel disease, which she testified resulted from her immune system being compromised. Id. Plaintiff testified that she has a breathing condition that requires her to use a ProAir inhaler. R. 50. She testified that cold air, walking a distance, and going up or down stairs all exacerbate her condition. Id.

Ms. Bartlett testified that she goes to Summit Center approximately once a week for her bipolar disorder and depression. R. 51. Doctors prescribed Plaintiff Prozac and Xanax for her mental conditions. Id. Plaintiff testified that those medications cause her nausea. Id. Ms. LaRosa asked Plaintiff to discuss some of her symptoms related to the depression and bipolar disorder. Id. Plaintiff testified that she would cry almost every day for no reason, that she felt like she has nothing to look forward to, she frequently has severe mood swings, and she self mutilates. R. 51–52. Specifically, Plaintiff testified that she used to cut herself, but now, she bites her fingernails until they bleed because it makes her feel better. R. 52–53. Ms. Bartlett testified that she bites her nails constantly and they bleed a lot. R. 53. This creates another problem because of her Hepatitis C, so she has to wear band-aids and be careful what she touches. R. 52–53.

Plaintiff testified that she has difficulty getting along with people and feels like

everyone is out to get her. R. 53. She also testified that her boyfriend, who supports her, is planning on leaving her because he cannot deal with her anymore. Id. When asked about having suicidal thoughts, Plaintiff testified that she has thought about it, but she does not want to commit suicide for religious reasons. R. 54.

Ms. Bartlett also testified that she suffers from arthritis that bothers all of her joints, especially in her back. Id. She said that she could sit for about twenty minutes before needing to get up and move, and she can only stand for about fifteen minutes. R. 55. Plaintiff also testified that she can only walk about twenty feet before she has to stop and catch her breath. Id. Plaintiff testified that she has difficulty lifting milk out of the fridge and estimates that she is unable to lift more than five pounds. But, Plaintiff mostly takes care of the cleaning and laundry around her residence. Plaintiff testified that either her parents or her boyfriend usually take her to the grocery store because going alone makes her feel paranoid, including panic attacks. R. 57. Ms. Bartlett also testified that she suffers from COPD and cirrhosis. R. 59.

  2. The Vocational Expert's Testimony

A VE also testified at the hearing. R. 61. The VE summarized Plaintiff's prior work experience, including work as a cleaner and as a certified nurse assistant. R. 63–64. The ALJ then asked the VE to

> assume an individual with the same age, education, and past work experience as the Claimant, with the following abilities. The individual is capable of light exertional work. They can never climb ladders, ropes, or scaffolds. They can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl.
>
> The individual must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, excessive vibration, and respiratory irritants such as fumes, odors, dusts, gases[ . . . ], and poorly ventilated areas. The individual should also avoid concentrated exposure to hazards such as

5

dangerous, moving machinery and unprotected heights.

The individual [ . . . ] also should work in a low stress job, defined as having only occasional decisionmaking required, occasional changes in the work setting, and no strict production quotas. The individual also is capable of occasional interaction with the general public and occasional interaction with coworkers and supervisors.

R. 64–65.

The ALJ then asked, "[c]an such an individual with these limitations perform the Claimant's past work as actually or customarily performed?" R. 65. The VE testified that Ms. Bartlett could not. Id.

Then, the ALJ said to the VE, "I'm going to ask you to assume the same individual as described in the last hypothetical, but at a sedentary exertional level. Could an individual with these limitations perform any of the Claimant's past work?" *Id.* The VE again testified that she could not. *Id.* The ALJ asked the VE if any of Plaintiff's skills from her past work were transferable at the sedentary level with the current RFC, and the VE testified that there were not any transferable skills. R. 65–66.

The ALJ then asked the VE to go back to the initial hypothetical, and she asked the VE if there are other jobs that Plaintiff could do at the light level? R. 66. The VE testified that there are other jobs. Id. All of the jobs are light exertional level and an SVP no higher than two. Id. Specifically, the VE gave cashier, cafeteria attendant, and ticket taker as jobs the individual could perform at the light level. R. 66.

Next, the ALJ asked if there were any unskilled jobs Plaintiff could perform at the sedentary level. R. 67. The VE testified that some jobs did exist: surveillance monitor, ticket counter, and charge account clerk. Id.

When the VE was asked how much off task an individual could be in these jobs, she

testified that not performing job duties more than approximately ten percent of the day would likely result in termination. R. 67. The ALJ also asked the VE how absences would affect the individual's employment, and the VE testified that missing about a day a month, calling off, coming in late, leaving early, one would be likely to lose her job fairly quickly. R. 67–68. Ms. LaRosa did not ask the VE any questions. R. 68.

### III. ALJ FINDINGS

The ALJ found that Ms. Bartlett has not engaged in substantial gainful activity ("SGA") since April 27, 2012, the application onset date. R. 12. The ALJ also found that Ms. Bartlett had "the following severe impairments: history of hepatitis C/chronic liver disease; chronic obstructive pulmonary disease (COPD); rheumatoid arthritis; gastroesophageal reflux disease (GERD); cervicalgia/cervical strain; lumbar strain; mild degenerative changes of the left ankle/foot; and bipolar disorder/depression." *Id.*

The ALJ then determined that Ms. Bartlett did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12. The ALJ found that Ms. Bartlett had "the residual functional capacity to perform a range of light work as defined in 20 C.F.R. § 416.967(b) subject to some additional nonexertional limitations. More specifically, the claimant can occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl, but cannot climb ladders/ropes/scaffolds. She must avoid concentrated exposure to extreme cold, extreme hear, wetness or humidity, excessive vibration, irritants (such as fumes, odors, dust, gasses, and poorly ventilated areas), and hazards (such as dangerous moving machinery and unprotected heights). She is capable of work in a low stress job defined as having only occasional decision-making required, occasional changes in the work

7

setting, and no strict production quotas. Finally, she is capable of occasional interaction with the general public, co-workers, and supervisors." R. 14.

The ALJ also found that Ms. Bartlett was unable to perform any past relevant work, and was, pursuant to 20 C.F.R. § 416.963, an "individual closely approaching advancing age" on the date the application was filed. R. 20. The ALJ found that Ms. Bartlett had at least a high school education, and could communicate in English. Id. Finally, the ALJ determined that there were jobs in significant numbers that Ms. Bartlett could perform; thus, she was not disabled under the Act since April 27, 2012, the date the application was filed. R. 21.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

In her Motion for Summary Judgment, Plaintiff argues that the ALJ made four significant errors in her decision: The ALJ (1) mischaracterized the Commissioner's regulations concerning how she regarded Plaintiff's therapist; (2) improperly relied solely on the opinions of reviewing examiners; (3) ignored the "depressive" symptoms emanating from Ms. Bartlett's bipolar disorder; and (4) did not fully develop the record concerning Ms. Bartlett's hepatitis C and chronic liver impairment. ECF No. 10 at 1.

First, Plaintiff asserts that the ALJ incorrectly categorized therapist Jackson's opinion as coming from a non-medical source; however, under 20 C.F.R. § 416.913(e), therapists should be classified as "other medical sources." Id. at 6. Plaintiff also argues that the ALJ did not support her decision to discount therapist Jackson's opinion with findings, rather, the ALJ "argued" why therapist Jackson's opinion should not be included. Id. at 6–11.

8

Second, Plaintiff argues that the ALJ relied solely upon the state-agency examiners' opinions. Plaintiff contends that these opinions alone, under Fourth Circuit precedent, are not substantial evidence. Thus, Plaintiff argues, the ALJ's decision is not supported by substantial evidence.

Third, Plaintiff "contends that the ALJ ignored and failed to credit her statements concerning the intensity, persistence, and limiting effects of her bipolar condition." Id. at 12. Specifically, Plaintiff argues that the ALJ's decision in this regard conflicts with SSR 96-7p.

Fourth, Plaintiff argues that the ALJ failed to fully develop the record because she did not provide a consultative examination concerning Ms. Bartlett's Hepatitis C or chronic liver disorder. Id. at 14. Asserting that the record "does not contain specialized medical evidence to assess the severity of Ms. Bartlett's liver impairment[,]" Plaintiff argues that remand is necessary for further investigation. Id. at 15.

The Commissioner counters Plaintiff's arguments by asserting that substantial evidence supports the ALJ's decision and that the ALJ satisfied her duty to develop the record. *See* ECF No. 12. Specifically, the Commissioner asserts that the ALJ (1) properly evaluated the evidence from Plaintiff's therapist, according to the regulations; (2) correctly relied upon state agency medical and psychological experts; (3) appropriately did not credit Plaintiff's statements concerning the limiting effects of her symptoms; and (4) adequately developed the record in regard to Plaintiff's Hepatitis C or chronic liver disorder. Id.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C.

§§ 405(g), 1383(c)(3).

3. Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

An ALJ must consider all of the evidence in the record when making a credibility determination. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to an ALJ's discretion, such determinations shall not be sustained if based on improper criteria. *Breeden v. Weinberger,* 493 F.2d 1002, 1010 (4th Cir. 1974) ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained."). Moreover, SSR 96-7P states,

> [t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain

11

> specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

1996 WL 374186 at *4.

4. <u>Treating Therapist's Opinion</u>

> Therapists are medical sources who do not fall within the Commissioner's list of acceptable medical sources. *See* 20 C.F.R. § 404.1513(d) and § 416.913; SSR 06–03p. Social Security Ruling (SSR) 06–03p clarifies how the Commissioner is to consider the opinions of providers who are not considered acceptable medical sources. Specifically, the opinions of non-acceptable medical sources, who often have "close contact with . . . individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time," are to be considered as "valuable sources of evidence for assessing impairment severity and functioning." SSR 06–03p. Additionally, depending on the facts of a particular case, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating source." *Id.* The Social Security Commission has recognized, as evidenced by SSR 06–03p, that health care is no longer only delivered by licensed physicians. Those medical professionals who support physicians, including physician assistants, nurse practitioners, and licensed clinical social workers, provide much of the care currently administered to patients. SSR 06–03p dictates that ALJs must at least consider the opinions of these non-acceptable medical sources, especially when there is evidence in the record to suggest that a non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to an opinion about the claimant's impairment or ability to work. Affording the greatest weight to the opinion of two non-treating physician sources cannot be supported by substantial evidence when a treating source, albeit a non-acceptable treating source, has provided substantial evidence to the contrary. The substantial evidence standard is concerned with limiting an ALJ to basing a determination regarding a claimant's status on evidence that is both material and reliable. This is precisely why "[g]enerally, [the Commissioner] give[s] more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments." 20 C.F.R. § 404.1527(d)(2).

*Foster v. Astrue*, 826 F. Supp. 2d 884, 886–87 (E.D.N.C. 2011).

## V. DISCUSSION

1. <u>The ALJ erred in her discussion of Plaintiff's therapist, Ms. Jackson</u>

Plaintiff's first issue presented to this Court is whether the ALJ "mischaracterized the Commissioner's regulations concerning the role of Therapist Jackson in providing evidence of Ms. Bartlett's limitations." ECF No. 10 at 1. The Commissioner argues that the ALJ appropriately followed the rules and regulations in determining that Plaintiff's therapist was a "non-medical source" and giving her opinion "little weight." *See* ECF No. 12; R. 17–18. The Commissioner's argument does not persuade the undersigned.

The Commissioner argues that Plaintiff "makes much" of the ALJ's incorrect characterization of her treating therapist, Ms. Jackson, but words are important. Words are particularly important when they categorize the source of some evidence. To be clear, this Court is not putting form before substance; had the ALJ used an incorrect label yet followed the proper analysis, her error would likely be harmless. That is not the case here.

Frankly, the undersigned is as equally troubled by the lack of explanation as the significant errors the Court has discovered during its review of the record. For instance, in addition to incorrectly classifying Ms. Jackson, the ALJ also stated "there is no evidence that Ms. Jackson saw the claimant on a consistent basis." R. 18. This is plainly incorrect. Ms. Jackson's completed Mental Residual Functional Capacity Questionnaire says, just above Ms. Jackson's signature, "Date treatment began: 10/01/2012 Frequency of treatment/visits: Once a month DATE: 01/13/2014." R. 455. That is evidence that Plaintiff was seen by Ms. Jackson once a month for nearly a year and a half. Plaintiff also testified at the ALJ hearing that she was being treated at Summit Center for her bipolar disorder and depression, and, in response to being asked how often she is seen there, she said, "I've been

going once a week. Around once a week depending on the weather because I . . . don't drive and I will definitely not drive in the winter, in the weather. Then she - - I guess she comes from someplace far away, too, and she don't - - so sometimes they cancel out. But I've been trying to go once a week." R. 51. In another example, the ALJ wrote in her decision,

> [t]he undersigned also considered the hand-written note on a prescription pad stating 'pt not able to work due to severe depression and cirrhosis of the liver' by an unknown doctor from Health Access (Exhibit 10F). The undersigned gives this assessment no weight . . . as the record does not show that the claimant had any contact with him or her and there is no other identification of this source other than he or she works at Health Access.

R. 18. This is incorrect. At the ALJ hearing, Ms. LaRosa, in an opening statement, said that "[t]here's also a statement at Exhibit 10-F from Dr. Kirchdoerfer at Health Access that states that the Claimant is unable to work due to her mental conditions, and also the hep C." R. 32.

Surely, the ALJ may choose to give evidence more or less weight based upon a number of factors as enumerated in the rules and regulations; however, here, the ALJ said there was *no* evidence even though a quick review of the record shows otherwise.

The ALJ's errors in regard to Plaintiff's treatment with her therapist, Ms. Jackson, are too much for this Court to make a fair review of this matter. In addition to mischaracterizing therapist Jackson's role under the regulations and finding there was "no evidence" that Plaintiff saw Ms. Jackson consistently, the ALJ also provided such a brief explanation of her reasons for weight given, that the Court could hardly make a meaningful review had those errors not been committed. It is not this Court's place to make original findings; that is a matter properly left to ALJs. *See Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, (4th Cir. Dec. 17, 2015) (noting that Fourth Circuit "precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to

14

hypothesize the ALJ's justifications that would perhaps find support in the record); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed her decision). Accordingly, the matter should be remanded for reconsideration and a fuller explanation of the ALJ's decision.

2. <u>The ALJ erred by relying solely on state agency consultants without a proper explanation</u>

Plaintiff notes that the Fourth Circuit has explained, "Social Security Act disability cases . . . involve an assessment of whether a claimant is in fact disabled, and the judgment of the treating doctor is crucial to making that determination." *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 126 (4th Cir. 1994). "In those cases, we have held that the opinion of a doctor who never examined or treated the patient cannot serve to refute the conclusions of the patient's treating physician." Id. (citing *Martin v. Secretary of Dep't of Health, Educ. & Welfare*, 492 F.2d 905, 908 (4th Cir. 1974).

The upshot of the Commissioner's response is that "[t]he ALJ explained that [the state agency consultants'] opinions were 'largely supported by objective clinical findings and are fairly consistent with the other substantial evidence . . . [.]" ECF No. 12 at 12 (quoting R. 17). The problem with the Commissioner's argument, again, is that this Court cannot conduct any meaningful review without first scouring the record. The Fourth Circuit has been clear that such is not the function of United States Magistrate Judges or District Courts. *See Fox*, 2015 WL 9204287, at *4 (4th Cir. Dec. 17, 2015) ("The magistrate judge recognized the ALJ's failure to provide sufficient reasoning, yet he still engaged in a fact-finding expedition. . . . Despite both courts' recognition of the ALJ's error, they engaged in an analysis that the ALJ should have done in the first instance. To do so was in error."); *See also Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) ("Just as it is not our

province to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ, it is also not our province—nor the province of the district court—to engage in these exercises in the first instance."). Accordingly, this Court again finds that the ALJ did not adequately explain her decision to adopt the state agency consultant's opinions and reject Plaintiff's evidence. Saying the state agency consultants' opinions were "fairly consistent with other substantial evidence" is the kind of conclusory statement the Fourth Circuit routinely rejects.

3. <u>The ALJ's credibility analysis is supported by substantial evidence</u>

An ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ.

When considering whether an ALJ's credibility determination is supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessment for that of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusion. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ actually observed the Plaintiff and is best situated to make such a determination, "the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989–990. (citing *Tyler v. Weinberger,* 409 F.Supp. 776 (E.D.Va. 1976)).

In this case, the Court finds that the ALJ's credibility assessment of Plaintiff was consistent with the applicable regulation, case law, and Social Security Rulings. 20 C.F.R.

§ 416.929; SSR96–7P; *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The ALJ considered Plaintiff's subjective complaints and the objective medical record in reaching a conclusion regarding Plaintiff's credibility. The record contains substantial evidence to support the ALJ's decision in this regard. The evidence is such that the ALJ could find Plaintiff's statements conflicted with the objective medical evidence and record as a whole. In her decision, the ALJ explained,

> the claimant's failure to follow the aforementioned advice at least suggests that her mental symptoms are not as severe as she has asserted especially since the record fails to demonstrate the presence of any mental abnormalities upon examination that would establish the existence of a pattern of depression of such severity as to prevent the claimant from mentally sustaining work on a sustained basis.

R. 19. The ALJ elaborated by discussing the various things Plaintiff could have done, or was recommended to do, but did not–tending to show that her ailments were not as severe as claimed.

The Court finds that the ALJ's decision contained specific reasons for her finding on Plaintiff's credibility, was supported by the evidence in the case record, and was sufficiently specific to make clear to the Court the weight the ALJ gave to Plaintiff's statements and the reasons for that weight.

4. <u>The ALJ satisfied her duty to develop the record</u>

Plaintiff argues that the "ALJ made no attempt to develop such or procure" specialized medical evidence concerning the severity of Plaintiff's liver impairment. ECF No. 10 at 14–15. Accordingly, Plaintiff claims that her "case must be remanded." Id. at 15. Plaintiff's argument is not persuasive.

Plaintiff "bears the burden of proving that [s]he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42

U.S.C. § 423(d)(5); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). The Fourth Circuit has explained that a "claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five." *Felton-Miller v. Astrue*, 459 F. App'x 226 (4th Cir 2011) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). "If a decision regarding disability can be made at any step of the process, however, the inquiry ceases." Id. (Citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

Further, the regulation Plaintiff cites to support this proposition, 20 C.F.R. 416.919a(b), as quoted in Plaintiff's memorandum, states, "[w]e *may* purchase a consultative examination . . . ." ECF No. 10 at 14 (emphasis added). The language cited in Plaintiff's memorandum indicates that the ALJ was under no compulsory duty to procure a consultive examination. Thus, Plaintiff is incorrect when she suggests that the ALJ failed to fully develop Ms. Bartlett's claim concerning liver functioning.

## VI. RECOMMENDATION

After reviewing the record, the Court concludes that the ALJ incorrectly considered evidence provided by therapist Leesa Jackson; and the ALJ did not provide enough meaningful analysis regarding her decision to adopt the state agency consultants and reject Plaintiff's evidence. However, the ALJ's decision not to order specialized testing regarding Plaintiff's liver impairment and her credibility determination regarding Plaintiff's depressive symptoms are supported by substantial evidence.

Therefore, the Court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 9] Motion for Summary Judgment be **GRANTED IN PART**; and

2. Commissioner's [ECF No. 11] Motion for Summary Judgment be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to District Court Judge Frederick P. Stamp, Jr. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 31, 2016

/s/ *James E. Seibert*
JAMES E. SEIBERT
U.S. MAGISTRATE JUDGE